Gray v. St. Martins Press          CV-95-285-M    02/18/99

UNITED STATES DISTRICT COURT

DISTRICT OF NEW HAMPSHIRE


Robert K. Gray,
      Plaintiff

v.                                        Civil No. 95-285-M

St. Martin's Press, Inc.
and Susan Trento,
      Defendants


**O R D E R**

In this defamation action plaintiff, Robert K. Gray, alleges that The Power House, a book authored by Susan Trento and published by St. Martin's Press, contains five statements which are false and defamatory. By prior order, the court denied plaintiff's motion to amend his complaint (more than six years after publication of The Power House, and over three years after he filed suit, plaintiff sought to add twenty additional allegedly defamatory statements to his complaint). In so doing, the court held that plaintiff's motion was untimely, he failed to explain the undue delay associated with filing that motion, and defendants would be substantially prejudiced if the court were to permit him to substantively amend the complaint at such a late date. Gray v. St. Martin's Press, No. 95-285-M, slip op. (D.N.H. October 5, 1998) (the "October Order").


Perhaps anticipating the court's ruling on his motion to amend, plaintiff foreshadowed the current dispute when, in

response to defendants' objection to his motion to amend, he made the following declaration:

> Plaintiff intends to prove the falsity of the additional statements whether he is allowed to obtain relief for them by way of an amended complaint. All allegedly false statements made by Ms. Trento and St. Martin's in connection with the publication of The Power House are probative of the state of mind of both defendants.

Plaintiff's reply memorandum in support of his motion to amend (document no. 151) at 5. At the time, the court noted that the admissibility of those twenty additional statements was not at issue. See October Order at 11, n.1 ("Whether (or to what extent) plaintiff will be permitted to introduce evidence relating to those statements in the absence of an amendment to his complaint is, of course, not before the court and well beyond the scope of this order.").

Defendants dispute both the relevance and admissibility of those additional statements and have filed a motion in limine, by which they move the court to preclude plaintiff from "using allegedly false statements in The Power House, other than the five statements in suit, to prove the state of mind of either Defendant." Defendants' motion in limine (document no. 162), at 1. Plaintiff objects, asserting that "Rule 404(b) [of the Federal Rules of Evidence] permits evidence of other wrongs or acts to prove knowledge and recklessness." Plaintiff's objection (document no. 165) at 1.

2

## Discussion

Plaintiff claims that evidence of other defamatory and/or inaccurate statements in The Power House (i.e., beyond the five statements specifically at issue) is admissible under Federal Rule of Evidence 404(b) to show "the absence of accident and inadvertence." Plaintiff's memorandum at 5. Rule 404(b) provides, in pertinent part:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

Fed. R. Evid. 404(b). Plaintiff suggests that he should be permitted to demonstrate the falsity of roughly 20 collateral statements contained in The Power House, not because they form the basis of his complaint, but because they support his thesis that Trento was corrupt and unworthy of belief. In so doing, plaintiff hopes to demonstrate St. Martin's "actual malice" in publishing the five allegedly defamatory statements at issue in this case.

The core of plaintiff's argument appears to be that because St. Martin's knew or should have known that the 20 collateral statements were false (and, therefore, should have recognized Trento's work as unreliable or, at a minimum, should have carefully scrutinized it for accuracy), it acted recklessly or deliberately in publishing the five allegedly defamatory

3

statements which are the subject of this suit.  As discussed more fully below, however, St. Martin's mere failure to thoroughly investigate Trento's writing is not sufficient to support a finding of actual malice.  Nor would it suffice for plaintiff to simply show that St. Martin's conduct amounted to even an extreme departure from professional journalistic standards.  To prevail, plaintiff must prove more.  And, that proof must directly relate to the five allegedly defamatory statements identified in the complaint.

A.    Relevance of the Additional Statements.

In order to prevail on his defamation claim, plaintiff must prove, by clear and convincing evidence, that St. Martin's published the allegedly defamatory statements with "actual malice."  In the context of a defamation action brought by a public figure, the Supreme Court has held that a defendant acts with actual malice when it publishes statements with a "high degree of awareness of their probable falsity," Garrison v. Louisiana, 379 U.S. 64, 74 (1964), or if it "entertained serious doubts as to the truth of his publication," St. Amant v. Thompson, 390 U.S. 727, 731 (1968), or if it acted with "purposeful avoidance of the truth."  Harte-Hanks Communications, Inc. v. Connaughton, 491 U.S. 657, 692 (1989).  See also Masson v. New Yorker Magazine, Inc., 501 U.S. 496, 499 (1991) (holding that actual malice is "a term of art denoting deliberate or reckless falsification.").  "Mere negligence," or even an

4

"extreme departure" from accepted professional journalism standards, does not suffice. See Connaughton, 491 at 665. Rather, the actual malice standard demands that, as to each specific statement in suit, a plaintiff demonstrate that the publisher has "come close to wilfully blinding itself to the falsity of its utterance." Tavoulareas v. Piro, 817 F.2d 762, 776 (D.C. Cir. 1987).

Having identified the burden of proof borne by plaintiff, the next point of interest is how that burden applies to the case at hand. As the Court of Appeals for the District Of Columbia Circuit observed, "defamation plaintiffs cannot show actual malice in the abstract; they must demonstrate actual malice in conjunction with a false defamatory statement." Tavoulareas, 817 F.2d at 794 (emphasis in original). It is, therefore, difficult to discern the relevance of 20 additional allegedly false statements in the book to the issues in dispute. The fact that other statements in the book might be false or inaccurate neither tends to prove nor disprove the assertion that defendants published the five specific statements in suit with actual malice. Thus, it is difficult to see how those statements pass even the threshold barrier presented by the relevance requirement of Rule 401.

To sustain his burden at trial, plaintiff must prove more than a simple failure on St. Martin's part to investigate

Trento's claims.  See St. Amant, 390 U.S. at 731-33.  Instead, he must show that each statement in suit was made with a high degree of awareness that it was likely false or, at a minimum, that St. Martin's purposefully avoided discovering the falsity of those statements.  See Connaughton, 491 U.S. at 692.  Taking the time and energy to prove the falsity of 20 or more different statements contemporaneously published in The Power House would not advance that cause and, as discussed below, would likely confuse the jury and distract it from its true task.

B.    Rule 404(b) - Proof of Knowledge or Intent.

Plaintiff contends that falsity of the 20 collateral statements is both relevant to, and highly probative of, defendants' state of mind.  He suggests that evidence that The Power House contains numerous collateral false statements about him demonstrates, ipso facto, that the five statements at issue were not the product of accident or mistake, observing that, "The oftener a like act has been done, the less likely that it could have been done innocently."  Plaintiff's memorandum at 5.

While that proposition may be true in the abstract, to some degree, it does not provide much support for plaintiff's assertion that evidence regarding the falsity of 20 collateral statements is admissible under Rule 404(b).  That defendants published one or more false collateral statements about plaintiff does not provide much (if any) support for his claim that they

6

acted with actual malice when they published one or more of the statements in suit.

Here, as in Price v. Viking Penguin, Inc., 676 F.Supp. 1501 (D.Minn. 1988), it would certainly seem that the collateral statements are not probative of defendants' state of mind with regard to the allegedly defamatory statements at issue. In Price, the court observed:

> The court finds little or no support for plaintiff's argument that "collateral falsehoods" may provide a basis for inferring actual malice. As the District of Columbia Circuit recently held, "defamation plaintiffs cannot show actual malice in the abstract; they must demonstrate actual malice in conjunction with a false defamatory statement." [citing Tavoulareas] Accordingly, even if [the author] had subjective doubts about, for example, the mineral deposit conspiracy theory, this would not establish an inference of actual malice with respect to his statements concerning plaintiff. The doubt must be in conjunction with the alleged defamatory statement.

Price, 676 F.Supp. at 1513 (emphasis supplied).

Finally, the court notes the obvious: the 20 collateral statements were published in The Power House. Thus, they are quite unlike evidence which might tend to establish Trento's reputation for accuracy (or inaccuracy), a "historical fact" of which St. Martin's might reasonably have been aware. If, for example, Trento had been accused of defamation in the past and if St. Martin's knew or should have known of that accusation, perhaps one might reasonably argue that St. Martin's had an

7

obligation to investigate her claims in <u>The Power House</u> in greater detail, and failure to do so might arguably be urged as a basis for finding willful blindness. That is not, however, the type of evidence which plaintiff seeks to introduce. Instead, he wishes to show the jury 20 collateral statements which were made contemporaneously with the five statements in suit, attempt to prove them false, and then argue that because they were false St. Martin's should have known they were false, and so acted with actual malice in publishing the five statements in suit. He has, however, failed to demonstrate how such evidence, if admitted, would support his claim. It does not follow that defendants acted with actual malice when they published the five statements actually identified in the complaint, because other statements not in suit were also false. Simply stated, plaintiff has failed to articulate how the claim that <u>The Power House</u> contains collateral factual inaccuracies sheds any light on defendants' state of mind when they published the allegedly defamatory statements or whether defendants published the five statements in suit with the requisite "actual malice."

C. <u>Rule 403: Unfair Prejudice, Confusion, Undue Delay.</u>

Even if arguably relevant and otherwise admissible, however, the collateral statements are of comparatively little probative value. Were they introduced at trial, the court has no doubt that they would needlessly confuse (and quite possibly mislead) the jury, unduly waste time and substantially prolong the trial,

8

and unfairly prejudice defendants. See Fed. R. Evid. 403. Thus, even if the court were persuaded that the collateral statements were relevant under Rule 401 and admissible under Rule 404(b) to show defendants' state of mind or absence of mistake, it would still preclude their introduction at trial under Rule 403.

The injection into this trial of twenty mini-trials concerning the alleged falsity of collateral statements in the book would likely confuse the jury as to the precise issue before them: whether the five specific statements in suit were published with actual malice. A five-fold increase in allegedly false (and, according to plaintiff, defamatory) statements would also unavoidably and unnecessarily prolong the proceedings. And, in substance, it would permit plaintiff to do precisely that which the court precluded him from doing when it denied his motion to amend the complaint. The proper means by which to have brought that case before a jury was either: (a) to have included all 25 statements in the original complaint; or (b) to have properly supported his motion to amend, specifically explaining the extensive delay in seeking the amendment. Plaintiff did neither.

Finally, as noted in the October Order, defendants would be substantially prejudiced if, at this late date, the scope of the trial were suddenly expanded from five allegedly false and defamatory statements (about which substantial discovery has been

had) to one involving twenty additional allegedly false statements.

### Conclusion

For the foregoing reasons, defendants' motion in limine (document no. 162) is granted. Plaintiff has failed to demonstrate that the collateral statements are admissible under Rule 404(b) to show defendants' state of mind or the absence of mistake. Moreover, even if plaintiff had made such a showing, the court would, in the exercise of its discretion, preclude the introduction of evidence of the false and defamatory nature of those statements under Rule 403 on grounds that the probative value of that evidence is substantially outweighed by the danger of unfair prejudice, confusion of the issues, and likelihood of misleading the jury.

**SO ORDERED**

_____
Steven J. McAuliffe
United States District Judge

February 18, 1999

cc:  James G. Walker, Esq.
     Mark D. Balzli, Esq.
     Cletus P. Lyman, Esq.
     William L. Chapman, Esq.
     John C. Lankenau, Esq.
     Steven M. Gordon, Esq.
     Seth L. Rosenberg, Esq.

10